**UNITED STATES DISTRICT COURT**
**District of Connecticut**

| | |
|---|---|
| **GUANGZHOU LANGZHU CRAFTS CO., LTD.,**<br><br>*Plaintiff*,<br><br>**v.**<br><br>**MICHAEL H. DOMESICK, d/b/a ABMILL,**<br>*Defendant*. | **Case No. 3:26-cv-01283-VAB**<br>November 20, 2026 |

**DEFENDANT'S ANSWER TO FIRST AMENDED COMPLAINT AND FIRST AMENDED COUNTERCLAIMS**

Defendant Michael H. Domesick ("Domesick" or "Defendant"), appearing pro se, responds to the numbered allegations of the First Amended Complaint (ECF No. 34) filed by Plaintiff Guangzhou Langzhu Crafts Co., Ltd. ("GLC" or "Plaintiff"). Each numbered response corresponds to the like-numbered paragraph of the First Amended Complaint. Admissions are limited to the matters expressly admitted. A statement that Defendant lacks knowledge or information sufficient to form a belief is a denial under Federal Rule of Civil Procedure 8(b)(5).

**NATURE OF THE ACTION**

**1.** Defendant admits that Plaintiff brings an action seeking declaratory relief under the statutes identified in paragraph 1.

**2.** Defendant admits that Plaintiff requests the declarations described and identifies U.S. Patent No. 12,616,871 (the "'871 Patent") as the patent in suit. Defendant denies that Plaintiff is entitled to declarations of noninfringement, invalidity, or unenforceability.

**3.** Defendant admits that an actual controversy presently exists concerning infringement and validity of the ’871 Patent, but denies that Plaintiff established such a controversy when it commenced this action. Defendant admits that he submitted infringement reports to Amazon concerning the six identified ASINs and that Amazon subsequently delisted those ASINs. Defendant denies that the reported sales were lawful or that his enforcement was baseless. Defendant lacks knowledge or information sufficient to form a belief as to Plaintiff’s alleged injuries and therefore denies those allegations.

**4.** Defendant admits that Plaintiff requests the relief described, but denies that his reports were baseless, that Plaintiff is entitled to the relief requested, or that this is an exceptional case warranting an award against Defendant.

**THE PARTIES**

**5.** Defendant lacks knowledge or information sufficient to form a belief as to GLC’s corporate organization, principal place of business, and legal ownership of the storefronts and therefore denies those allegations. Defendant denies that the Accused Products are “Non-Infringing Products.”

**6.** Admitted.

**7.** Defendant admits that he is a licensed attorney and participated in the prosecution of applications in the ’871 Patent family. Defendant denies the remaining allegations of paragraph 7.

## JURISDICTION AND VENUE

**8.** Defendant admits that this action arises under the patent laws of the United States and that 28 U.S.C. §§ 1331 and 1338(a) provide subject-matter jurisdiction over properly asserted patent-law claims. Defendant denies that Plaintiff established an actual Article III controversy sufficient to support jurisdiction over its declaratory-judgment claims when this action commenced.

**9.** Admitted, except that Defendant denies that his Amazon infringement reports identified Plaintiff and lacks knowledge or information sufficient to form a belief as to whether the products identified in those reports were Plaintiff's products.

**10.** Admitted, except that Defendant denies that 28 U.S.C. § 1400(b) governs venue for Plaintiff's declaratory-judgment claims.

**11.** Defendant admits that he submitted infringement reports to Amazon concerning the identified ASINs, that Amazon subsequently delisted those ASINs, and that he has not granted Plaintiff a covenant not to sue. Defendant lacks knowledge or information sufficient to form a belief as to Plaintiff's ownership of the products or ASINs or its alleged injuries. Defendant denies the remaining allegations of paragraph 11.

## FACTUAL BACKGROUND — THE ’871 PATENT AND ITS FAMILY

**12.** Admitted.

**13.** Admitted.

**14.** Admitted.

**15.** Defendant admits that the ’573 Patent issued with seven claims and that the ’871 Patent issued with 162 claims, including 13 independent claims. Defendant denies that the claim count increased at each generation and denies the remaining allegations of paragraph 15.

**16.** Defendant admits that the applications in the ’871 Patent Family share portions of their written descriptions and disclose embodiments involving left and right components, curved or rocking bases, and prone-plank use with forearms supported on pads. Defendant denies the remaining allegations of paragraph 16.

**DEFENDANT’S PROSECUTION CONDUCT**

**17.** Denied, except that Defendant admits he is a licensed attorney.

**18.** Defendant admits the filing and issuance dates stated in paragraph 18 and that he observed Pilates- and abdominal-exercise products during the period identified. Defendant denies the remaining allegations.

**19.** Defendant admits that continuation and continuation-in-part applications were filed in the ’871 Patent family and that he drafted claims during prosecution. Defendant denies the remaining allegations of paragraph 19.

**20.** Defendant admits that the ’871 Patent has more than ten times as many independent claims as the ’573 Patent, that the patent family includes continuation-in-part applications, and that the USPTO applied different prior-art references at different stages of prosecution. Defendant admits that the quoted phrases do not appear in the descriptive text of the predecessor applications. Defendant denies the remaining allegations of paragraph 20.

**21.** Defendant admits that the ’047 Application was filed on October 7, 2022, as a continuation of the ’962 Application, and that its original specification was entitled “Plank Support Exercise Apparatus and Related Methods.” Defendant denies the remaining allegations of paragraph 21.

**22.** Defendant admits that the ’047 specification as originally filed contains the quoted passages. Defendant denies the remaining allegations of paragraph 22.

**23.** Defendant admits that the ’047 specification as originally filed contains the quoted language. Defendant denies the remaining allegations of paragraph 23.

**24.** Defendant admits that he submitted amendments to the ’047 Application during prosecution. Defendant denies the remaining allegations of paragraph 24.

**25.** Defendant admits that the ’047 Application was filed as a continuation of the ’962 Application and that he made statements during prosecution that amendments introduced no new matter. Defendant denies the remaining allegations of paragraph 25.

**26.** Denied.

**27.** Defendant admits that the January 27, 2025 substitute specification revised the specification’s title to “Abdominal Core and Plank Exercise Apparatus” and that its marked-up copy shows the language identified by GLC in paragraphs 22 and 23 struck through to indicate its deletion from the then-current specification of record. Defendant denies the remaining allegations of paragraph 27.

Notably, nearly five months before that substitute specification was submitted, the September 4, 2024 Office Action cited by GLC in paragraph 139 had already allowed then-pending claim 136. The Office Action specifically identified the left hand grip and left arm support pad as “configured to move in a linear direction and independently from the right support arm” among its reasons for allowance. Sept. 4, 2024 Office Action, Detailed Action at 8 (ECF No. 51-2 at 11).

Even apart from that earlier allowance, the following before-and-after comparisons show that, despite GLC’s allegation that the substitute specification “recharacterized the invention,” the cited deletions neither added nor changed any disclosed apparatus structure.

(a) **"Unrestricted Sliding" — Background of the Disclosure, page 3 of the January 27, 2025 marked-up substitute specification.**

- **Before:** "These devices, along with other conventional devices, have many shortcomings. One major shortcoming is that the devices use unrestricted sliding movement, such that users are highly susceptible to inadvertently overextending exercise positions which can result in injury."
- **After:** "These devices, along with other conventional devices, have many shortcomings. One major shortcoming is that users are highly susceptible to inadvertent injury."

Two points are important in light of GLC's allegations. First, this passage criticizes prior-art devices, and the bad result attributed to their shortcomings remained exactly the same before and after the deletion: inadvertent injury. More importantly, the deletion did not add, remove, or change any apparatus structure disclosed in the specification.

(b) **"Translationally Static Frame Member" — Summary of the Disclosure, page 5 of the January 27, 2025 marked-up substitute specification.**

- **Before:** "The present disclosure can also be viewed as providing a plank support exercise apparatus. Briefly described, in architecture, one embodiment of the apparatus, among others, can be implemented as follows. The plank support exercise apparatus has a hand grip. A frame member extends from the hand grip. At least one arm support pad is connected to the frame member. A ground-interface surface is positioned along at least a portion of the frame member, wherein the frame member is translationally static relative to a ground surface."
- **After:** "The present disclosure can also be viewed as providing an exercise

apparatus. Briefly described, in architecture, one embodiment of the apparatus, among others, can be implemented as follows. The exercise apparatus has a hand grip. A frame member extends from the hand grip. At least one arm support pad is connected to the frame member. A ground-interface surface is positioned relative to a ground surface."

The passage expressly describes *one embodiment, among others,* rather than establishing a requirement for every embodiment. Nor does the statement that "the frame member is translationally static" identify any particular structure that makes it so. The same structural components—the handgrip, frame member, arm-support pad, and ground-interface surface—remain disclosed before and after the deletion.

(c) **"Translationally Static Destabilizing Movement" — Detailed Description, page 14 of the January 27, 2025 marked-up substitute specification.**

- **Before:** "It is important to note that the controlled, destabilized movement of the apparatus 110 may be limited to translationally static movement, such that neither the apparatus 110 nor the user 10 on the apparatus 110 moves translationally. Rather, the controlled, destabilized movement may include only rotational movement about one or more axes. In some cases, such as shown in FIGS. 3-4, the rotational movement may be limited to movement in a single degree of freedom, e.g., rotational movement about an axis of curvature of the curved surface of the destabilizing device 160. This single degree of freedom movement may allow the apparatus 110 to pivot or rock about the destabilizing device 160, which provides an enhanced plank exercise experience. However, limiting the destabilizing movement to rotational movement only prevents the user from being exposed to injurious situations rife in the conventional art, where an exercise device can slip

translationally (forwards, backwards, left, or right) out from underneath the user 10. A variety of other destabilizing devices 160 can be employed with the apparatus 110, as are discussed relative to other figures."

- **After:** "It is important to note that the destabilized movement of the apparatus 110 may include rotational movement about one or more axes. In some cases, such as shown in FIGS. 3-4, the rotational movement may be limited to movement in a single degree of freedom, e.g., rotational movement about an axis of curvature of the curved surface of the destabilizing device 160. This single degree of freedom movement may allow the apparatus 110 to pivot or rock about the destabilizing device 160, which provides an enhanced plank exercise experience. A variety of other destabilizing devices 160 can be employed with the apparatus 110, as are discussed relative to other figures."

The original passage described an optional way the apparatus could move, not a requirement applicable to every embodiment. It expressly stated that movement *may be limited* to rotational movement, meaning that translational movement was not prohibited in other embodiments. Importantly, the deleted language identified no structure that required the apparatus to remain translationally static. Therefore, removing this optional description of movement did not add or change any disclosed apparatus structure.

(d) **"Flat, Stable Contact" — Detailed Description, pages 21–23.**

GLC cites the deletion of the following sentence from the Detailed Description, page 21 of the January 27, 2025 marked-up substitute specification:

"Generally, the ground-interface surface 150 is configured to allow the

apparatus 110 to rest in flat, stable contact with the ground surface and to maintain a stable position regardless of the front-to-back or side-to-side weight distribution on the apparatus 110 of the user's bodyweight."

The cited sentence was deleted, but the teaching was not. The same substitute specification still expressly stated that the ground-interface surface allowed the apparatus "to be in stable contact with the ground" (at 22) and was "configured to sit flush with the ground surface" (at 23). *See* Jan. 27, 2025 Marked-Up Substitute Specification at 21–23; '871 Patent, col. 11, ll. 39–49 (ECF No. 34-1).

Moreover, far from being eliminated as GLC suggests, stable ground contact is expressly claimed in the '871 Patent. Claims 98 and 145 each recite "one or more ground-contacting surfaces, defined as a stable surface in contact with the ground surface during use." *See* '871 Patent, claims 98 and 145 (ECF No. 34-1). In fact, GLC's own complaint contradicts its suggestion that stable ground contact is incompatible with movement of other apparatus components. GLC describes its Two-Handle Products as having "two independently sliding hand-grip assemblies" mounted on a flat base that is "held motionless against the ground by fixed non-skid pads." First Am. Compl. ¶¶ 36(b), 68. GLC's own description confirms that a base can maintain stable ground contact while other parts of the apparatus move.

(e) **"Isometric Plank Exercise" — Background of the Disclosure, page 1 of the January 27, 2025 marked-up substitute specification.**

- **Before:** "A plank exercise is an isometric core strength exercise that involves maintaining a difficult position for extended periods of time."
- **After:** "A plank exercise is a core strength exercise."

According to GLC, this deletion was among the changes that "recharacterized the invention." First Am. Compl. ¶¶ 22, 27. But the deleted words described a conventional

isometric plank exercise, not the apparatus. The very next sentence, which remained unchanged, still describes the front plank as being "held in a push-up position." *See* '871 Patent, col. 1, ll. 33–36 (ECF No. 34-1). The issued patent expressly describes movement that "may allow the apparatus 110 to pivot or rock," providing "an enhanced plank exercise experience." *Id.*, col. 7, ll. 28–32. Thus, far from recharacterizing the invention, the deletion merely made the introductory description more consistent with the specification's existing disclosure of an enhanced, dynamic variation of the conventional plank exercise.

**28.** Defendant admits that claim 98 contains the quoted language and that the phrases "linear, flat path of travel" and "constant height" do not appear in the written descriptions of the '871 Patent Family. Defendant denies the remaining allegations of paragraph 28.

**29.** Defendant admits that the '047 specification as originally filed describes adjustment mechanisms and contains the quoted passage. Defendant denies the remaining allegations of paragraph 29.

**30.** Defendant admits that the phrase "channel or groove" appears in the claims of the '871 Patent but not in the written descriptions of the '871 Patent or its predecessors, and that claim 156 recites "constant lateral spacing." Defendant denies the remaining allegations of paragraph 30.

**31.** Defendant admits that 35 U.S.C. § 112(a) and (b) impose requirements concerning written description, enablement, and definiteness. Defendant denies the remaining allegations of paragraph 31.

**32.** Denied.

**33.** Denied.

## THE ACCUSED PRODUCTS

**34.** Defendant admits that the identified ASINs correspond to the Accused Products. Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 34.

**35.** Defendant admits that the identified ASINs correspond to the Accused Products. Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 35.

**36.** Defendant admits that Plaintiff's Exhibit B depicts products associated with the identified ASINs in two general configurations, with sliding components and differing handle configurations, and that the depicted products do not include a convex or curved rocking base. Defendant further admits that both accused configurations accommodate seated or kneeling exercises. Defendant denies the remaining allegations of paragraph 36.

## AMAZON REPORTS AND ALLEGED INJURY

**37.** Defendant admits that on June 3, 2026, he submitted a patent-infringement report to Amazon concerning the '871 Patent and certain ASINs identified in the First Amended Complaint, without first obtaining physical samples of the reported products. Defendant denies that the report identified Plaintiff and lacks knowledge or information sufficient to form a belief as to whether the reported products belonged to Plaintiff and therefore denies that allegation.

**38.** Defendant admits that Amazon removed the identified listings following his infringement reports. Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 38.

**39.** Defendant admits that on June 4, 2026, he submitted a patent-infringement report to Amazon concerning the ’871 Patent and certain ASINs identified in the First Amended Complaint, without first obtaining physical samples of the reported products. Defendant denies that the report identified Plaintiff and lacks knowledge or information sufficient to form a belief as to whether the reported products belonged to Plaintiff and therefore denies that allegation.

**40.** Defendant admits that Amazon removed the identified listings following his infringement reports. Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 40.

**41.** Defendant admits that on June 12, 2026, he submitted an additional patent-infringement report to Amazon concerning the ’871 Patent and certain ASINs identified in the First Amended Complaint, without first obtaining physical samples of the reported products. Defendant denies that the report identified Plaintiff and lacks knowledge or information sufficient to form a belief as to whether the reported products belonged to Plaintiff and therefore denies that allegation.

**42.** Defendant admits that Amazon removed the identified listings following his infringement reports. Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 42.

**43.** Admitted, except that Defendant lacks knowledge or information sufficient to form a belief as to whether the products belonged to Plaintiff.

**44.** Defendant admits that Amazon delisted the six identified ASINs following his infringement reports. Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 44.

**45.** Defendant admits that he is a licensed attorney and participated in prosecution of the ’871 Patent and applications in its patent family. Defendant denies the remaining allegations of paragraph 45.

**COUNT 1 — DECLARATORY JUDGMENT OF NONINFRINGEMENT (ONE-HANDLE PRODUCTS)**

**46.** Defendant incorporates his responses to paragraphs 1 through 45 as though fully set forth herein.

**47.** Denied.

**48.** Defendant admits that the One-Handle Products do not meet all limitations of claim 1 and that claim 1 contains the quoted limitation. Defendant denies the remaining allegations of paragraph 48.

**49.** Defendant admits that the One-Handle Products do not meet all limitations of claim 8 and that claim 8 contains the quoted limitation. Defendant denies the remaining allegations of paragraph 49.

**50.** Defendant admits that the One-Handle Products do not meet all limitations of claim 19 and that claim 19 contains the quoted limitation. Defendant denies the remaining allegations of paragraph 50.

**51.** Admitted.

**52.** Defendant admits that the One-Handle Products do not meet all limitations of claim 37 and that claim 37 contains the quoted limitation. Defendant denies the remaining allegations of paragraph 52.

**53.** Admitted.

**54.** Defendant admits that the One-Handle Products do not meet all limitations of claim 65 and that claim 65 contains the quoted limitation. Defendant denies the remaining allegations of paragraph 54.

**55.** Defendant admits that the One-Handle Products do not meet all limitations of claim 89 and that claim 89 contains the quoted limitation. Defendant denies the remaining allegations of paragraph 55.

**56.** Denied.

**57.** Admitted.

**58.** Denied.

**59.** Denied.

**60.** Admitted.

**61.** Denied.

**62.** Denied.

**63.** Denied.

**64.** Defendant admits that the parties presently dispute whether the One-Handle Products infringe the ’871 Patent. Defendant denies the remaining allegations of paragraph 64, including that Plaintiff established an Article III controversy when this action commenced.

**65.** Denied.

**COUNT 2 — DECLARATORY JUDGMENT OF NONINFRINGEMENT (TWO-HANDLE PRODUCTS)**

**66.** Defendant incorporates his responses to paragraphs 1 through 65 as though fully set forth herein.

**67.** Denied.

**68.** Defendant admits that claim 1 contains the quoted limitation and that the Two-Handle Products have generally flat bases without a curved rocking element. Defendant denies the remaining allegations of paragraph 68.

**69.** Admitted.

**70.** Admitted.

**71.** Denied.

**72.** Admitted.

**73.** Admitted.

**74.** Admitted.

**75.** Defendant admits that the Two-Handle Products do not meet all limitations of claim 89. Defendant denies the remaining allegations of paragraph 75.

**76.** Denied.

**77.** Admitted.

**78.** Denied.

**79.** Denied.

**80.** Denied.

**81.** Denied.

**82.** Denied.

**83.** Defendant admits that the parties presently dispute whether the Two-Handle Products infringe the ’871 Patent. Defendant denies the remaining allegations of paragraph 83, including that Plaintiff established an Article III controversy when this action commenced.

**84.** Denied.

**COUNT 3 — INVALIDITY UNDER 35 U.S.C. §§ 102 AND 103**

**85.** Defendant incorporates his responses to paragraphs 1 through 84 as though fully set forth herein.

**86.** Defendant admits that the parties presently dispute the validity of the ’871 Patent under 35 U.S.C. §§ 102 and 103. Defendant denies that Plaintiff established an Article III controversy when this action commenced.

**87.** Denied.

**88.** Defendant admits that U.S. Patent No. 5,224,909 to Hamilton issued in 1993 and is not among the references listed on the face of the ’871 Patent. Defendant lacks knowledge or information sufficient to form a belief as to whether the USPTO otherwise considered Hamilton and therefore denies that allegation. Defendant denies the remaining allegations.

**89.** Defendant admits that Chinese Utility Model CN 201108700 Y was published in 2008 and depicts an exercise apparatus. Defendant denies the remaining allegations.

**90.** Defendant admits that U.S. Patent No. 7,645,218 to Potok issued in 2010 and depicts an exercise apparatus. Defendant denies the remaining allegations.

**91.** Defendant admits that U.S. Patent Application Publication No. 2012/0108405 was published in 2012 and depicts an exercise apparatus. Defendant denies the remaining allegations.

**92.** Defendant admits that U.S. Patent No. 9,592,419 to Cuffe depicts an exercise apparatus. Defendant denies the remaining allegations.

**93.** Defendant admits that U.S. Patent Application Publication No. 2015/0065311 depicts an exercise apparatus. Defendant denies the remaining allegations.

**94.** Denied.

**95.** Denied.

**96.** Denied.

## COUNT 4 — INVALIDITY FOR LACK OF WRITTEN DESCRIPTION

**97.** Defendant incorporates his responses to paragraphs 1 through 96 as though fully set forth herein.

**98.** Defendant admits that the parties presently dispute the validity of the ’871 Patent under 35 U.S.C. § 112(a). Defendant denies that Plaintiff established an Article III controversy when this action commenced.

**99.** Admitted.

**100.** Defendant admits that the phrases identified in subparagraphs (a)–(c) appear in certain claims of the ’871 Patent but do not appear verbatim in the specification text, excluding the claims, of the identified patents. Defendant further admits that claim 156 recites “constant lateral spacing.” Defendant denies the remaining allegations of paragraph 100.

**101.** Defendant admits that the specifications disclose embodiments involving left and right components, curved or rocking bases, and prone-plank use with forearms supported on pads. Defendant denies the remaining allegations of paragraph 101.

**102.** Denied.

**103.** Denied.

**104.** Denied.

**105.** Denied.

**106.** Denied.

## COUNT 5 — INVALIDITY FOR LACK OF ENABLEMENT

**107.** Defendant incorporates his responses to paragraphs 1 through 106 as though fully set forth herein.

**108.** Defendant admits that the parties presently dispute the validity of the ’871 Patent under 35 U.S.C. § 112(a). Defendant denies that Plaintiff established an Article III controversy when this action commenced.

**109.** Admitted.

**110.** Denied.

**111.** Denied.

**112.** Defendant admits that the *Wands* factors identified in paragraph 112 are among the factors considered in determining whether undue experimentation is required under 35 U.S.C. § 112(a). Defendant denies the remaining allegations.

**113.** Denied.

**114.** Defendant admits that the phrases “channel or groove,” “linear, flat path of travel,” and “constant height” do not appear in the descriptive text of the ’871 Patent or its predecessors. Defendant denies the remaining allegations.

**115.** Denied.

**116.** Denied.

**117.** Denied.

**118.** Denied.

**COUNT 6 — INVALIDITY FOR INDEFINITENESS**

**119.** Defendant incorporates his responses to paragraphs 1 through 118 as though fully set forth herein.

**120.** Defendant admits that the parties presently dispute the validity of the ’871 Patent under 35 U.S.C. § 112(b). Defendant denies that Plaintiff established an Article III controversy when this action commenced.

**121.** Admitted.

**122.** Denied.

**123.** Defendant admits that "channel or groove" appears at least twenty-nine times in the claims of the '871 Patent. Defendant denies the remaining allegations.

**124.** Defendant admits that the specification describes embodiments involving rocking movement. Defendant denies the remaining allegations of paragraph 124.

**125.** Denied.

**126.** Defendant admits that claim 156 recites "constant lateral spacing" and that the specification describes embodiments with adjustable spacing between components. Defendant denies the remaining allegations of paragraph 126.

**127.** Denied.

**128.** Denied.

**129.** Defendant admits that "substantially," "generally," and "elongated" appear in certain claims of the '871 Patent. Defendant denies the remaining allegations.

**130.** Denied.

**COUNT 7 — UNENFORCEABILITY FOR INEQUITABLE CONDUCT**

Defendant has moved to dismiss Count 7 pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) (ECF No. 47). Defendant maintains that pending motion and requests that the Court decide that motion on its merits. Defendant responds to Count 7 without withdrawing the motion or waiving the failure-to-state-a-claim defense asserted in it.

**131.** Defendant incorporates his responses to paragraphs 1 through 130 as though fully set forth herein.

**132.** Defendant admits that individuals substantively involved in patent prosecution owe a duty of candor and good faith to the USPTO and that amendments may not introduce new matter. Defendant denies the remaining allegations of paragraph 132.

**133.** Admitted.

**134.** Defendant admits that he made statements during prosecution of the ’047 Application that amendments introduced no new matter. Defendant denies the remaining allegations of paragraph 134.

**135.** Defendant admits that on October 7, 2022, he filed the ’047 Application as a continuation of the ’962 Application and signed the associated transmittal form. Defendant denies the remaining allegations of paragraph 135, including Plaintiff’s characterization of the continuation designation and signed transmittal as constituting the specific certification alleged therein.

**136.** Defendant admits that on January 25, 2024, he amended the ’047 Application, adding claims 85 and 95, among others. Defendant denies the remaining allegations of paragraph 136.

**137.** Defendant admits that on February 11, 2024, he amended the ’047 Application, adding claim 126. That claim recited “a frame member comprising a continuous tubular element” and “a cylindrically shaped surface in contact with a ground surface.” It did not recite the linear or sliding movement at the heart of Plaintiff’s allegations of new matter. Defendant denies the remaining allegations of paragraph 137.

**138.** Defendant admits that on August 12, 2024, he submitted claim amendments to the ’047 Application, including claim 136. Defendant denies the remaining allegations of paragraph 138.

**139.** Defendant admits that the September 4, 2024 non-final Office Action rejected claims 85, 95, 98, 113, 117, 126, 140–141, and 153–156, but denies that it rejected then-pending claim 136. To the contrary, the Detailed Action expressly states, "Claim 136 is allowed." That allowance was based in part on the left hand grip and arm support pad being "configured to move in a linear direction and independently from the right support arm." Sept. 4, 2024 Office Action, Detailed Action at 8–9 (ECF No. 51-2 at 11–12).

The prosecution chronology therefore establishes that the January 27, 2025 substitute specification—which according to GLC introduced "new matter" concerning linear movement (Am. Compl. ¶¶ 27, 143, 147)—was not submitted until nearly five months after claim 136 had already been allowed.

**140.** Defendant admits that on January 27, 2025, he submitted a replacement specification, drawings, and proposed claim amendments. Defendant denies the remaining allegations of paragraph 140.

**141.** Defendant admits that on April 19, 2025, he amended the '047 Application, adding claim 301, among others. Defendant denies the remaining allegations of paragraph 141.

**142.** Defendant admits that on April 29, 2025, he amended the '047 Application, adding claim 313, among others. Defendant denies the remaining allegations of paragraph 142.

**143.** Denied.

**144.** Denied.

**145.** Defendant admits that he made statements during prosecution of the ’047 Application that amendments introduced no new matter. Defendant denies the remaining allegations of paragraph 145.

**146.** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 146 and therefore denies them.

**147.** Denied.

**148.** Denied.

**149.** To the extent a response is required, Defendant admits that the quoted language appears in the cited decision.

**150.** Defendant admits that he was a licensed attorney at the relevant time. Defendant denies the remaining allegations of paragraph 150.

**151.** Denied.

**152.** Denied.

**153.** Defendant admits that he had a duty to comply with 35 U.S.C. § 132. Defendant denies the remaining allegations of paragraph 153.

**154.** Denied.

**155.** Denied.

**156.** Denied.

**157.** Denied.

## RESPONSE TO PRAYER FOR RELIEF

Defendant denies that Plaintiff is entitled to any of the relief requested in paragraphs A through I of the First Amended Complaint’s Prayer for Relief.

## DEFENSE TO COUNT 7 — FAILURE TO STATE A CLAIM

Defendant asserted in his Motion to Dismiss Count 7 (ECF No. 47) that Count 7 fails to state a claim upon which relief can be granted under Rule 12(b)(6), and reasserts that defense in this Answer.

## FIRST AMENDED COUNTERCLAIMS

Domesick amends and restates his patent-infringement counterclaims (ECF No. 29) pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), alleging infringement of the ’871 Patent as set forth below.

## PARTIES, JURISDICTION, AND THE PATENT-IN-SUIT

**1.** Domesick is an individual residing in Connecticut, does business under the registered trade name Ab Mill, and is the named inventor and owner of U.S. Patent No. 12,616,871, entitled “Abdominal Core and Plank Exercise Apparatus,” issued on May 5, 2026.

**2.** On information and belief, GLC is a company organized under the laws of the People’s Republic of China, with its principal place of business in Huadu District, Guangdong Province, as GLC alleges in paragraph 5 of its First Amended Complaint.

**3.** This Court has original jurisdiction over these patent-infringement counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a). The Court has personal jurisdiction over GLC, and venue is proper because these counterclaims arise from the same patent and accused products that GLC placed at issue by bringing this action in this District.

**4.** The ’871 Patent contains 162 claims, including 13 independent claims. A copy is attached as Exhibit A to GLC’s First Amended Complaint (ECF No. 34-1), and the patent is incorporated herein by reference.

## THE ACCUSED PRODUCTS AND THEIR STRUCTURES

**5.** On information and belief, and based on GLC's allegations in paragraphs 5 and 34–36 of the First Amended Complaint, GLC operates the Amazon storefronts named "dongguanshiyingyuedianzishangwuyouxiangongsi" and "VigorEdge Limited" and offers and sells the accused Pilates-board products to customers in the United States through those storefronts.

**6.** The accused One-Handle Products are the exercise boards identified by Amazon Standard Identification Numbers ("ASINs") B0GS51LGV5, B0GS52KDNH, and B0GS56X42X. They include a sliding padded platform, a removable arched hand-grip assembly, and holes in the platform itself for inserting vertical handgrips.

**7.** The accused Two-Handle Products are the exercise boards identified by ASINs B0G1F72N3T, B0G1GC5D2M, and B0G1GH8NCV. They include two separate sliding padded assemblies, each with an associated hand grip, as well as two additional stationary vertical handgrips positioned toward the front of the board. Together, both configurations are the "Accused Products."

**8.** GLC's own product descriptions and photographs identify common structural features within each of the two accused configurations. The factual allegations below concern those identified products and their relevant structural features, including rigid boards, guide tracks, slidable pads, handles, and ground-contacting members providing stable ground contact. GLC specifically alleges that the Two-Handle Products have a base "held motionless against the ground by fixed non-skid pads" (First Am. Compl. ¶ 68).

**9.** GLC alleges that users of its One-Handle Products "do not adopt a prone plank position with forearms on pads and knees behind the frame" (First Am. Compl. ¶

36(a)). Yet the Amazon product listing for the One-Handle Products depicts a user adopting a forearm-supported plank position—a depiction also included in GLC's own court-filed exhibit (ECF No. 34-2 at 2; image below captured October 16, 2026, from the listing for ASIN B0GS51LGV5).



**10.** The following photograph, taken by Domesick, also depicts a user adopting a forearm-supported plank position on a One-Handle Product.



**11.** GLC never identifies the rear circular pad of the One-Handle Products as removable—even though the product images GLC includes in its First Amended Complaint show a One-Handle Product with the pad removed (First Am. Compl. ¶ 18). The accused One-Handle Product shown in the photograph above was purchased through an Amazon storefront that GLC itself alleges it owns and operates (First Am. Compl. ¶ 5), and both vertical handgrips were included with the product as delivered. The photograph shows the sliding pad supporting the user's forearms as she grasps both vertical handgrips, with her knees on the ground behind the frame—contrary to GLC's allegation (*id.* ¶ 36(a)). GLC's own images also depict these vertical handgrips both separately and installed in the sliding platform (*id*. ¶ 18).

**12.** The forearm-supported plank exercise configuration is equally apparent in GLC's Two-Handle Products. Although GLC alleges that the Two-Handle Products "are used with the user seated or kneeling on the board" (First Am. Compl. ¶ 36(b)), its Amazon product listing depicts a user resting her forearms on two separate sliding support pads, with her knees on a separate pad behind the board (image below captured October 16, 2026, from the listing for ASIN B0G1F72N3T). The same photograph appears in GLC's own court-filed exhibit (ECF No. 34-2 at 1), depicting a forearm-supported exercise configuration that GLC's written allegations fail to acknowledge.



**13.** Each accused configuration has rigid support surfaces defining left and right portions on opposite sides of its longitudinal centerline, corresponding to the left and right portions recited in claims 98, 118, and 145 of the ’871 Patent. Separate guide channels on opposite sides of the centerline correspond to claim 98’s “at least two distinct channels or grooves that are non-contiguous across the centerline.” Their rigid walls guide rollers supporting the sliding assemblies along “a linear, flat path of travel at a constant height relative to a ground surface,” as recited in claim 98.

**14.** Those same guide channels have elongated openings bounded by opposing rigid longitudinal edges, with one opening in each of the board’s left and right portions, corresponding to claim 118’s “at least one elongated opening” and claim 145’s “a first elongated opening and a second elongated opening.”

**15.** In both accused configurations, the opposing longitudinal edges of the elongated openings are formed by the same molded, one-piece board structure. During at least a portion of their movement, the sliding pad bases pass directly over that structure, with their geometric centers proximate to it, satisfying the corresponding limitations of claim 145.

**16.** Both accused configurations rest on stationary, non-skid ground-contacting feet or pads positioned below their rigid upper support surfaces. GLC expressly alleges that the Two-Handle Products have a base "held motionless against the ground by fixed non-skid pads" (First Am. Compl. ¶ 68). The One-Handle Products likewise rest on non-skid feet that provide stable ground contact. In each configuration, the feet or pads provide at least three coplanar points of ground contact, including points in two laterally spaced regions on opposite sides of the centerline and a third region spaced from the first two. At least one ground-contact point lies beyond a vertical plane parallel to the centerline that intersects a support pad on the same side of the centerline.

**17.** As illustrated in the photographs discussed in paragraphs 9–12 above, including GLC's own court-filed product images (ECF No. 34-2 at 1–2) and Domesick's photograph of the One-Handle Product with its rear pad removed, both accused configurations accommodate downward-facing, forearm-supported abdominal exercise. Each configuration permits the user's knees to be positioned behind a vertical plane through an end of each of the left and right guide channels, with a portion of the lower limbs contacting the ground.

**18.** The Accused Products also satisfy additional limitations recited in claims dependent from independent claims 98, 118, and 145. Both configurations satisfy dependent claim 119 because their padded sliding assemblies move along substantially linear paths while maintaining a constant distance from the ground across all use positions of the pads. The Two-Handle Products additionally have separate left and right padded sliding assemblies, each mounted on its own base, with the bases physically separated across the centerline and independently movable along corresponding guide channels and elongated openings, satisfying dependent claims

102, 122, 131, and 152. Each assembly further includes an associated handle or grip portion that moves forward with its support pad while the pad supports the user's forearm, satisfying dependent claims 105 and 106. The respective sliding bases travel along substantially linear paths confined to opposite sides of the centerline, with the corresponding elongated openings likewise confined to their respective sides, satisfying dependent claims 153 and 154.

**19.** Both accused configurations further satisfy dependent claims 99 and 100 because their left and right guide channels, including their rigid borders, recessed surfaces, channel ends, and intervening board structure, are formed in the recited combinations as portions of the same, unitary one-piece structure. Both configurations further satisfy dependent claim 114 because, during at least a portion of their movement, the sliding pad bases pass directly over the channels or the unitary structures forming their opposing borders, with their geometric centers proximate thereto. Both configurations further satisfy dependent claims 147 and 148 because their integrally formed rigid support structures underlie the pad-supporting surfaces, extend beyond the front and rear ends of the sliding bases in at least one use configuration, and provide forwardmost and rearmost points of support beneath the bases on a single unitary one-piece construction. The sliding pad bases themselves are formed as unitary one-piece structures extending downward from the portions contacting the padding around their outer perimeters, with portions extending substantially flush with or below the uppermost plane of the rigid support surfaces and their lowest peripheral extents directly adjacent to those surfaces throughout their movement, satisfying dependent claims 107, 113, 124, and 155. In at least one use position, substantially the entirety of each rigid, unitary one-piece base is positioned in the back half of the apparatus,

satisfying dependent claim 133. These infringement examples are illustrative, not exhaustive, and do not limit the allegations supporting the independent and dependent claims expressly asserted in Counts I and II. Domesick reserves the right, subject to applicable deadlines and court orders, to identify additional infringed dependent claims through the Disclosure of Asserted Claims and Infringement Contentions under paragraph 6 of the Court's Standing Order in Patent Cases.

**20.** Based on GLC's allegations in the First Amended Complaint and on information and belief, GLC has offered for sale and sold the Accused Products in the United States after the '871 Patent issued on May 5, 2026, including through the identified Amazon listings, and continues to offer them for sale without Domesick's authorization.

## COUNT I — PATENT INFRINGEMENT (ONE-HANDLE PRODUCTS)

**21.** Domesick incorporates paragraphs 1 through 20 of these Counterclaims as though fully set forth herein.

**22.** GLC has directly infringed and continues to directly infringe independent claims 98, 118, and 145, and dependent claims 99–101, 103–104, 107, 113–114, 119–121, 123–124, 126–130, 133, 138–144, 146–151, and 155 of the '871 Patent under 35 U.S.C. § 271(a), including by offering to sell and selling the One-Handle Products in the United States without authority. Each One-Handle Product meets the limitations of those claims through the structures and arrangements alleged above and below.

**23.** For claim 98, the One-Handle Products have a single padded sliding platform spanning the board's left and right track-bearing portions. Rollers beneath the platform's base engage the separate guide channels on those portions, with the channels' rigid walls guiding the platform along the claimed linear, constant-height path. The remaining relevant structural and exercise-position features are described in paragraphs 9–17 above.

**24.** For claim 118, the sliding platform has a base directly underlying the padding and extending around at least half its perimeter. In an initial use position, the base can be positioned substantially entirely in the board's back half, supported at a point on the rear portion spaced from the midway axis. At an intermediate position, at least one track-bearing portion extends beyond both the front and rear ends of the base in the region between its left and right edges, and an imaginary transverse vertical plane through the pad's midpoint intersects that portion. The elongated opening lies at least partly beneath the base and guides its movement, while the base's perimeter remains free from direct attachment to the underlying board portion.

**25.** For claim 145, the sliding platform's base directly underlies the padding and extends to its perimeter. As alleged above, the base passes over the molded board structure forming the elongated openings, with its geometric center proximate to that structure. The product accommodates forearm-supported exercise with the user's knees behind a vertical plane through the rear edges of the left and right track-bearing portions and a portion of the lower limbs contacting the ground. The board's stationary feet provide the ground-contacting arrangement described above.

**26.** As a result of GLC's infringement through the One-Handle Products, Domesick has suffered damages and continuing injury and seeks the relief requested below.

## COUNT II — PATENT INFRINGEMENT
## (TWO-HANDLE PRODUCTS)

**27.** Domesick incorporates paragraphs 1 through 20 of these Counterclaims as though fully set forth herein.

**28.** GLC has directly infringed and continues to directly infringe independent claims 30, 98, 118, 145, and 156, and dependent claims 31–33, 35–36, 99–107, 112–114, 119–124, 126–144, 146–155, and 157–162 of the ’871 Patent under 35 U.S.C. § 271(a), including by offering to sell and selling the Two-Handle Products in the United States without authority. Each Two-Handle Product meets the limitations of those claims through the structures and arrangements alleged above and below.

**29.** For independent claim 30, the Two-Handle Products have separate left and right support arms, each inserted into a corresponding opening in the base of a sliding forearm pad. Each support arm includes a straight segment and a graspable portion. The central axes of the arms' straight segments maintain invariable lateral spacing relative to one another as their respective pad bases move independently along linear paths. The padding of each support pad extends from its center to its perimeter, and the pads are configured to engage the user's forearms while the corresponding handles are grasped. Notwithstanding GLC's allegation that the handles are "provided on the static base of the products" (First Am. Compl. ¶ 71), the support arms and their corresponding handles move together with their respective sliding pad bases. Rounded rollers beneath the assemblies have curved surfaces that dynamically contact the guide structures during movement, with an axis through the center of at least one roller remaining perpendicular to the vertical centerline plane. The assemblies travel along paths of predetermined finite length, satisfying dependent claim 31. Their respective bases comprise unitary one-piece structures extending downward from the portions contacting the padding around the lowest extents of their outer perimeters, satisfying dependent claim 32, and include integrally formed handle-receiving openings with insertion axes oriented as recited in dependent claim 33. The bases engage corresponding elongated guide channels symmetrically arranged on opposite sides of the centerline, with portions of their bottom surfaces substantially flush with or upwardly adjacent to the recited rigid planar support surfaces, satisfying dependent claim 35. Each support arm further includes an integrally formed upwardly extending portion that forms part of its corresponding handle and lies within the user's grasp, satisfying dependent claim 36.

**30.** For claim 98, the Two-Handle Products have separate left and right padded sliding assemblies supported on rigid board surfaces on opposite sides of the centerline. Rollers beneath each assembly engage a corresponding longitudinal guide channel, whose rigid walls guide movement along a linear, flat, constant-height path. The remaining relevant structural and exercise-position features are described in the common factual allegations above.

**31.** For claim 118, each padded sliding assembly has a rigid base directly underlying its padding and extending around at least half its perimeter. In at least an initial use position, the base can be positioned substantially entirely in the board's back half, supported at a point on the rear portion spaced from the midway axis. At an intermediate position, the underlying board portion extends beyond both the front and rear ends of the base in the region between its left and right edges, and an imaginary transverse vertical plane through the pad's midpoint intersects that portion. An elongated opening lies at least partly beneath the base and aligns its movement, while the base's perimeter remains free from direct attachment to the underlying board portion.

**32.** For claim 145, each sliding assembly has a base directly underlying its padding and extending to its perimeter. As alleged above, the bases pass over the molded board structures forming the elongated openings, with their geometric centers proximate to those structures. The products accommodate forearm-supported exercise with the user's knees behind a vertical plane through the rear edges of the left and right track-bearing portions and a portion of the lower limbs contacting the ground. The stationary feet provide the ground-contacting arrangement described above.

**33.** For claim 156, the Two-Handle Products have separate left and right padded sliding assemblies, each with a handle connected to the base of its corresponding support pad. The assemblies move independently along substantially linear, coplanar paths of predetermined finite length. Their respective guide channels maintain each handle at a constant lateral spacing from the vertical centerline plane throughout its movement. Each support pad accommodates contact with the user's forearm at or distal to the elbow while the corresponding handle is grasped.

**34.** As a result of GLC's infringement through the Two-Handle Products, Domesick has suffered damages and continuing injury and seeks the relief requested below.

**PRAYER FOR RELIEF**

WHEREFORE, Domesick respectfully requests that the Court enter judgment denying GLC the relief requested in its First Amended Complaint and grant the following relief on the counterclaims:

A. A judgment that GLC has infringed the '871 Patent as alleged in Counts I and II of these First Amended Counterclaims;

B. An award of damages adequate to compensate Domesick for infringement, but in no event less than a reasonable royalty, together with prejudgment interest, pursuant to 35 U.S.C. § 284;

C. Preliminary and permanent injunctive relief pursuant to 35 U.S.C. § 283 prohibiting GLC and those acting in active concert or participation with it from making, using, offering to sell, or selling within the United States, or importing into the United States, the Accused Products and products no more than colorably different from them that infringe the '871 Patent;

D. An award of costs and post-judgment interest as permitted by law; and

E. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Domesick renews his demand for a trial by jury on all issues so triable.

Dated: November 20, 2026

/s/ Michael Domesick
Michael H. Domesick, Pro Se
98 Brighton St., New Britain, CT 06053
Tel.: 617-599-6008
Email: mike@abmill.com